UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ONEMD-LOUISVILLE PLLC, LLC,**            **PLAINTIFF**

vs.           **CIVIL ACTION NO. 3:19-CV-468-CRS**

**DIGITAL MED, LLC,**           **DEFENDANTS**
**d/b/a 1MD,**

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's motion to set aside an entry of default, DN 24, Plaintiff's motion for default judgment, DN 11, and Defendant's motion for extension of time to respond to Plaintiff's motion for default judgment, DN 20. These matters are now ripe for adjudication. For the following reasons, Defendant's motion to set aside entry of default shall be granted, Plaintiff's motion for default judgment shall be denied as moot, Defendant's motion for extension of time shall be denied as moot, and Defendant shall be ordered to reimburse Plaintiff for attorney's fees and costs directly related to its motions for entry of default and default judgment.

**I. Background**

Plaintiff OneMD-Louisville PLLC, LLC ("Plaintiff" or "OneMD") is a Kentucky limited liability corporation that "provides personalized medical and health related services, including annual physical examinations, short and long term health plan consultations, and a variety of other related services." DN 1 at 1. Plaintiff registered federal trademarks No. 3,057,605 for "ONEMD" and No. 3,057,606 for one¹MD (hereinafter "One1MD") on February 7, 2006. DN 1-2 at 2–3. Plaintiff has used these marks since August 2002. *Id*.

Defendant Digital Med, LLC ("Defendant" or "Digital Med") is a California limited liability corporation that sells health supplements and provides "access to the latest research, news, nutrition, and fitness" through the internet. DN 1-3 at 3. Defendant alleges it began marketing its products and services under the 1MD mark in 2014. DN 24 at 25. According to California Secretary of State records, Defendant formed Digital Med LLC on August 18, 2015. DN 1-5 at 2. On August 21, 2015, Defendant filed a U.S. trademark application for 1MD under Serial Number 86,732,789. DN 24-1 at 5. On December 9, 2015, the United States Patent and Trademark Office ("USPTO") issued an office action refusing registration of the mark citing OneMD's trademark registration No. 3,057,606 for One1MD. *Id*. On February 16, 2018, Digital Med filed a trademark application for its stylized mark, 1MD, under Serial No. 87,801,403. *Id*. On June 6, 2018, the USPTO issued an office action refusing registration of the mark citing OneMD's trademark registration No. 3,057,606 for One1MD. *Id*. Defendant submitted a response, but the examiner did not withdraw the refusal. *Id*. On March 19, 2019, Defendant filed a trademark application for the mark "1MD NUTRITION" under Serial Number 88,347,270. DN 1 at 4. On, June 5, 2019, the USPTO preliminarily refused registration citing OneMD's trademark registration No. 3,057,606 for One1MD. The USPTO website indicates this application was abandoned as of December 6, 2019 "because the applicant failed to respond or filed a late response to an Office action." http://tsdr.uspto.gov (accessed May 4, 2020).

On June 27, 2019, Plaintiff filed the instant action against Defendant alleging trademark infringement under 15 U.S.C. § 1114 (Count I), unfair competition under 15 U.S.C. § 1115 (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). DN 1 at 6–9. Plaintiff seeks to permanently enjoin Defendant from using the 1MD mark, an accounting of Defendant's profit to determine actual damages suffered by OneMD, damages to be

proven at a jury trial, punitive and exemplary damages, treble damages for willful violation of the Lanham Act, and attorneys' fees and costs for willful violation of the Lanham Act. DN 1 at 6–11. Counsel for Plaintiff submitted a sworn statement that "On July 1, 2019, Digital Med was duly served with the Summons and Complaint in this action via certified mail." DN 7-1 at 1. On August 6, 2019, Plaintiff also served the Office of the Secretary of State in Kentucky with a summons for the instant suit. DN 6 at 1. The captioned defendant on the summons was REGISTERED AGENTS, INC. ("Registered Agents")—Digital Med's registered agent in California.[1] DN 25 at 5. The Office of the Secretary of State in Kentucky served Registered Agents by sending a copy of the summons via certified mail, return receipt requested, on August 6, 2019. DN 6 at 1. Registered Agents received the summons on August 9, 2019. *Id*.

On September 26, 2019, Plaintiff moved for an entry of default against Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. DN 7. On October 22, 2019, the Clerk entered default against Defendant. DN 9. On February 5, 2020, Plaintiff moved the Court for default judgment against Defendant. DN 11. On March 4, 2020, more than eight months after Plaintiff filed its complaint, Defendant filed its first motions in the action—a notice of appearance, DN 18, and a motion for extension of time to file a response to Plaintiff's motion for default judgment, DN 20. On March 24, 2020, Defendant filed a consolidated motion that included (1) a motion to set aside entry of default, (2) a response to Plaintiff's motion for default judgment, and (3) a reply in support of Defendant's motion to extend. DN 24. The Court will address each motion.

---

[1] Defendant argues that service was deficient because Registered Agents was Defendant's agent in California, not Kentucky, and because the captioned defendant on the paperwork served upon Registered Agents listed Registered Agents as the "defendant." Defendant does not dispute that it received actual notice of the suit from Registered Agents, nor does it dispute that Registered Agents was its registered agent at the time of the suit. Defendant's arguments are without merit. The Court finds that service was "directed to the defendant" in accordance with Fed. R. Civ. P. 4(a)(1)(B) and that Defendant was properly served.

### III. Discussion

**A. Entry of Default**

Having reviewed the record in its entirety, the Court finds that there is good cause for setting aside the entry of default. "Judgment by default is a drastic step which should be resorted to only in the most extreme cases," *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983), and Sixth Circuit courts favor "trials on the merits." *Shepard Claim Service, Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 192 (6th Cir. 1986). Trial courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Under this good cause standard, "the district court enjoys considerable latitude to grant a defendant relief from a default entry." *SEC v. Merklinger*, 489 Fed. App'x 937, 939 (6th Cir. 2012) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). Three factors determine the outcome of such a motion to set aside an entry of default: (1) whether "the plaintiff will be prejudiced," (2) whether the defendant has a "meritorious defense," and (3) whether "culpable conduct of the defendant led to the default." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 192 (6th Cir. 1986). These factors favor setting aside the entry of default.

**1. Prejudice**

Setting aside the entry of default will not prejudice Plaintiff. "Mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *United Coin Meter Co., Inc v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983). Plaintiff argues that "not only would setting aside the default judgment delay this lawsuit, but Digital Med's continued infringement of OneMD's trademark rights is highly prejudicial and would continue if the default judgment was set aside." DN 25 at 13. Plaintiff's argument is simply another way of stating that setting aside the entry of default would

delay the injunction it seeks or, in other words, "would cause a '[m]ere delay in satisfying'" its claim. Plaintiff's argument is therefore insufficient to demonstrate prejudice.

### 2. Meritorious Defense

Digital Med's defense is meritorious. To assert a meritorious defense, Digital Med does not have to demonstrate a likelihood of success, "but simply must state a defense that is 'good at law.'" *Elite Labor Servs. v. Pcijvky, Inc.,* No. 1:17-CV-00056-GNS, 2018 U.S. Dist. LEXIS 28588, at *4 (W.D. Ky. Feb. 22, 2018) (citing *S. Elec. Health Fund v. Bedrock Servs*., 146 F. App'x 772, 777 (6th Cir. 2005)). "The key to this inquiry focuses on 'the determination of whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Id*. (quoting *S. Elec. Health Fund*, 146 F. App'x at 777). The test for whether Digital Med has a meritorious defense is, therefore, "not whether the defendant will win at trial, but rather whether the facts alleged by the defendant would constitute a meritorious defense if true." *In re Park Nursing Ctr., Inc*., 766 F.2d 261, 264 (6th Cir. 1985).

Defendant alleges it has a meritorious defense against Plaintiff's trademark infringement suit because Plaintiff's trademarks are weak and "should be afforded a narrow scope of protection covering only the OneMD Services." DN 24 at 14. According to Digital Med, because Plaintiff's trademark protections are limited only to the scope of providing concierge medical services, its trademark infringement claims would "not encompass the sale of nutritional supplements purchased over the Internet through Digital Med's website …and the 1MD store on Amazon." *Id*. In short, Defendant argues there is no likelihood of confusion (and thus no infringement) because "[c]onsumers are simply not likely to believe that Digital Med's branded nutritional supplements come from the Plaintiff or are in some way authorized or associated with Plaintiff and its medical services under the mark." *Id*.

5

The Sixth Circuit uses an eight-factor test to evaluate whether there is a likelihood of confusion when two parties use the similar marks: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). The Court finds Plaintiff's arguments are based on good law, and Plaintiff demonstrates a meritorious defense.

### a. Strength of Plaintiff's Mark

Defendant presents a meritorious defense by questioning the strength of Plaintiff's mark. The strength factor concerns both the mark's "conceptual strength," or its inherent distinctiveness, and its "commercial strength," or its recognition in the market. *Maker's Mark Distillery, Inc. v. Diageo N. Am.,* 679 F.3d 410, 419 (6th Cir. 2012) (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11.83 (4th ed.)).

### 1. Conceptual Strength

Conceptual strength is a measure of a mark's distinctiveness: whether it is generic, descriptive, or inherently distinctive. *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 428 (6th Cir. 2017). Descriptive marks "specifically describe[] a characteristic or ingredient of an article." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983). "A descriptive mark, by itself, is not protectable" and can only become protectable "by acquiring a secondary meaning, *i.e.*, becoming distinctive of the applicant's goods, become a valid trademark." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012) (internal quotation marks and ellipses omitted).

6

Defendant argues "Plaintiff's OneMD mark is descriptive of the nature or characteristics of the services provided under the mark, namely, having a single concierge doctor who has the expertise to treat a patient." DN 24 at 17. Defendant bolsters this argument by citing the manner in which OneMD describes its own services: "[t]he concept of OneMD, though unique, is simple. You have one doctor who has the time and expertise to focus on your personal health requirements." DN 24 at 13. As Defendant's arguments regarding the conceptual strength of Plaintiff's marks are based in good law, Defendant demonstrates a meritorious defense.

### 2. Commercial Strength

"A mark's commercial strength depends on public recognition, or the extent to which people associate the mark with the product it announces." *Progressive Distribution Servs. v. UPS, Inc.*, 856 F.3d 416, 430 (6th Cir. 2017) (citing *Maker's Mark*, 679 F.3d at 419). The Sixth Circuit has recognized that even a mark that is "inherently distinctive" may not be "especially strong if it fails to attain broad public recognition." *Maker's Mark*, 679 F.3d at 419 (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631–32 (6th Cir. 2002)). "Survey evidence is the most persuasive evidence of commercial recognition." *Id*. A mark's commercial strength may be further weakened by third-party use. *See Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1108 (6th Cir. 1991) (holding that evidence of third-party use of marks consisting of or containing the same initials used in plaintiff's mark should have been considered in assessing the strength of plaintiff's mark).

Defendant argues Plaintiff's mark is commercially weak because Plaintiff provides no evidence of "sales success, the number of patients that it has treated…, the expenditures made on advertising and promotion, unsolicited media coverage, industry awards received, the number of online favorable reviews or other such circumstantial evidence." DN 24 at 18. Defendant

7

concludes "it is unlikely Plaintiff will be able to demonstrate that its [One1MD] mark has achieved secondary meaning nationally such that consumers except in Louisville and its environs would be exposed to Plaintiff's mark. Therefore, Plaintiff's mark is commercially weak and entitled to only a narrow scope of protection." *Id*. Defendant also provides a comprehensive trademark search to support its position that the strength of Plaintiff's mark is reduced by third-party use of similar marks. DN 24-8. Defendant has identified various third parties who, like Plaintiff, market medical and other related products and services under a name incorporating "MD" or "ONE" or a variation thereof. *Id*. Defendant asserts this third party use of similar marks in related industries demonstrates "Plaintiff's mark is conceptually weak and entitled to a narrow scope of protection." DN 24 at 18.

Plaintiff responds that "federally registered trademarks entitle OneMD to a presumption of exclusive rights to use its trademarks nationwide and their incontestability status also prevent OneMD's trademarks from being challenged on the basis of descriptiveness." DN 25 at 15. As Plaintiff's marks have been registered since 2006, its marks are presumptively strong. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988) ("once a mark has been registered for five years, the mark must be considered strong and worthy of full protection."). However, this presumption is rebuttable. *Therma-Scan,* 295 F.3d at 632. (finding that even though a mark was registered and incontestable, it was "descriptive" for purposes of analysis of the likelihood of confusion and was, therefore, "not an especially strong mark."). For the purposes of demonstrating a meritorious defense, Defendant has rebutted this presumption.

### b. Relatedness of the Parties' Goods and Services

Three categories guide the court's evaluation of the relatedness factor: (1) "if the parties compete directly, confusion is likely if the marks are sufficiently similar;" (2) "if the goods and

services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors;" and (3) if the products are unrelated, confusion is highly unlikely." *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003). Where the goods and services provided by parties using similar marks are "unrelated, confusion is highly unlikely." *Kellogg Co. v. Toucan Golf, Inc*., 337 F.3d 616, 624 (6th Cir. 2003) (citation omitted).

Defendant presents a good law defense that the marks in question fall into the second or third categories. Defendant argues that its use of 1MD marks is unlikely to confuse consumers because the parties do not sell competitive products or services:

> Digital Med formulates, manufactures, promotes and sells over the Internet through its website located at <1md.org> and its store on Amazon a line of nutritional supplements. Ex. A ¶ 8. To help educate consumers about various health issues for which supplements may be useful, it provides free guides online. These guides do not offer medical advice. They provide general health information and offer healthy recipes. To be sure, the medical services provided by OneMD and the nutritional supplements sold by Digital Med are not directly competitive. They would not even be broadly considered to belong to the same industry. Given the disparate nature of the parties' goods and services, confusion is unlikely.

DN 24 at 18–19. Plaintiff responds that "since it is common practice for medical services to be offered by the same companies that offer health supplements, Digital Med's products are related to OneMD's services." DN 25 at 16.

While health supplements and medical services are certainly "related" in a general sense, relatedness at such a high level of generality does not necessarily mean consumers will confuse the parties. *See Homeowners*, 931 F.2d at 1109 (acknowledging that coexistence in a broad industry does not render services "related"). When viewing the parties' activities at a more granular level, Defendant makes a good law argument that the parties currently operate in distinct industries. As such, the Court finds that Defendant has demonstrated a meritorious defense based on this factor.

9

### c. Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores*, 109 F.3d at 283. The Sixth Circuit has "endorsed the 'anti-dissection rule,' which serves to remind courts not to focus only on the prominent features of the mark, or only on those features that are prominent for purposes of the litigation, but on the mark in its totality." *Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419, 423 (6th Cir. 1999) (citing *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571-72 (6th Cir. 1987) (holding "Pizza Caesar USA" and "Little Caesars" to be dissimilar despite both prominently featuring "Caesar")).

To support its position that the disputed marks are dissimilar, Plaintiff cites the Sixth Circuit's opinion in *AutoZone, Inc. v. Tandy Corp*. In *AutoZone*, the court stated "[t]he AUTOZONE and POWERZONE marks have some visual and linguistic similarities, but ultimately their differences outnumber their similarities such that the likelihood of confusion is small." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795–96 (6th Cir. 2004). Defendant argues that the balance of differences between Digital Med and OneMD's marks similarly outweigh the similarities, pointing out that "[w]hile the parties' marks sound the same when spoken, their appearance is dramatically different, and in the context of their specific goods and services, they have different meanings." DN 24 at 20. Specifically, Defendant enumerates a laundry list of differences, including font, color, the case of font used, and the use of the Caduceus symbol. *Id*. at 20–21. While the Court makes no ruling as to the likelihood of success in future proceedings, the Court finds that Defendant presents a meritorious defense based in good law.

### d. Evidence of Actual Confusion

"Nothing shows the likelihood of confusion more than the fact of actual confusion." *Groeneveld Transp.*, 730 F.3d at 517. Despite "actively using the [1MD] mark since August 2015"

10

and selling "tens of millions of dollars to over 350,000 customers," Digital Med states "it is not aware of a single instance of actual confusion." DN 4 at 21. In its complaint, Plaintiff states that "[u]pon information and belief, Defendant's actions have caused actual confusion," but provides no further specificity or affidavits to demonstrate actual confusion in the marketplace. DN 1 at 5. Based on the record before it, the Court finds that Defendant has demonstrated a meritorious defense based on the lack of actual confusion in the marketplace.

### e. Marketing Channels Used

In *Homeowners*, the Sixth Circuit described "marketing channels" as follows:

> This factor, also termed "channels of trade" by some courts, consists of considerations of how and to whom the respective goods or services of the parties are sold. This factor is very significant in illuminating what actually happens in the marketplace and, where other factors are not particularly probative, is of special importance. Obviously, dissimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception. Likewise if the services of one party are sold through different marketing media in a different marketing context than those of another seller, the likelihood that either group of buyers will be confused by similar service marks is much lower than if both parties sell their services through the same channels of trade.

*Homeowners Grp., Inc*, 931 F.2d at 1110.

Defendant argues its marketing channels do not overlap with Plaintiff's, stating "Plaintiff's target consumers are individuals residing or working in the Louisville, Kentucky area seeking concierge medical care" while "Digital Med's supplements are sold online...not…in doctor's offices or in bricks and mortar retail locations." DN 24 at 23. Plaintiff responds that because its "trademark registrations contain no limitations on the sales channels that it markets to or who consumers of its services would be…the services offered under OneMD's trademarks are presumed to travel on all normal channels of trade and to all classes of customers nationwide." DN 25 at 18 (citing *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1373 (Fed. Cir. 2013).

11

While Plaintiff's services are presumed to travel on all normal channels of trade for the purposes of trademark registration, the purpose of the *Frisch* analysis is to determine "what actually happens in the marketplace," not what may happen based on hypotheticals or presumptions. *Homeowners Grp., Inc.*, 931 F.2d at 1110. Accordingly, the Court finds that Defendant has presented a meritorious defense based on this factor.

### f. Likely Degree of Purchaser Care

In analyzing the likely degree of purchaser care, "the standard used by the courts is the typical buyer exercising ordinary caution." *Daddy's Junky Music Stores,* 109 F.3d at 285 (quotation omitted). "A higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication, or is making an expensive or unusual purchase. *Therma-Scan,* 295 F.3d at 638) (citing *Homeowners Group*, 931 F.2d at 1111).

Defendant argues this factor favors a low likelihood of confusion because the selection of a doctor is "a very personal decision that typically entails research and the consideration of recommendations from friends and family" and that "[similarly] the purchase of nutritional supplements is a very personal decision" because consumers "do not view them to be fungible goods or a commodity product for which they would freely substituting one brand for another." DN 24-1 at 5. Plaintiff responds that "when there is a high degree of similarity between the trademarks, like there is here, 'the significance of the likely degree of purchaser care for determining whether a likelihood of confusion exists decreases considerably.'" DN 25 at 18 (citing *Therma-Scan, Inc.,* 295 F.3d at 638). Plaintiff also cites *Daddy's Junky Music Stores* for its holding that "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores*, 109 F.3d at 286.

Both parties present compelling arguments as to why consumers of their respective products or services would exercise a greater or lesser degree of care and how the similarities and differences may increase or decrease the likelihood of confusion. While a conclusive finding of likelihood of confusion may require discovery, for the purposes of the instant motion, the Court finds that Defendant demonstrates a meritorious defense.

### g. Defendant's Intent in Selecting the Mark

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group*, 931 F.2d at 1111. "Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." *Daddy's Junky Music Stores,* 109 F.3d at 286 (citing *Little Caesar Enters. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir. 1987). Concerning how to establish that one party intended to cause confusion, the Sixth Circuit stated:

> "Proof of intent to appropriate another's property may be comparable to an expression of opinion by an expert witness; a defendant who purposely chooses a particular mark because it is similar to that of a senior user is saying, in effect, that he thinks there is at least a possibility that he can divert some business from the senior user -- and the defendant ought to know at least as much about the likelihood of confusion as the trier of fact."

*Little Caesar Enters*, 834 F.2d at 572.

Defendant argues that "[u]pon learning of Plaintiff's trademark registrations from the office action citation, Digital Med nonetheless had a good faith belief that its use of the mark did not infringe Plaintiff's rights given the significant differences in the overall commercial impressions between the marks…and the parties' respective goods and services" DN 24 at 25–26. Thus, Defendant argues, Plaintiff cannot demonstrate Digital Med had the intent to confuse consumers. *Id*. at 26. Plaintiff responds that because Digital Med used the 1MD mark, despite

13

Digital Med's constructive and actual notice of OneMD's trademark registration, this automatically constituted "intent" under the *Frisch* analysis. a DN 25 at 19.

Plaintiff offers no case law, and this court finds none, stating that the "intent" factor is met whenever a third party uses a mark despite actual or constructive knowledge of a similar registered mark. Plaintiff provides no evidence here upon which the court may conclude that Digital Med chose to use its 1MD mark "with the intent of causing confusion." Accordingly, Defendant has presented a meritorious defense based on this factor.

### h. Likelihood of Expansion of the Product Lines

"A strong possibility that either party may expand its business to compete with the other will weigh in favor of finding infringement. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (internal quotation marks omitted). Defendant's consolidated motion states Digital Med is only "in the business of formulating, manufacturing, promoting and selling supplements online" with no intent to expand into other product lines. DN 24 at 26. OneMed concedes that it has no intent to expand into supplement sales. DN 25 at 19. Accordingly, this factor is neutral. *See Therma-Scan*, 295 F.3d at 639 (finding that when there is no evidence of likelihood of expansion "the eighth factor is not particularly relevant in the present case and does not tilt the balance in either direction").

On balance, the Court finds Defendant demonstrates a meritorious defense under the "good law" standard.

### 3. Culpability of Defendant's Conduct

When deciding whether to set aside an entry of default, a court must consider "[w]hether culpable conduct of the defendant led to the default." *United Coin Meter Co. v. Seaboard C. R.R.*,

14

705 F.2d 839, 845 (6th Cir. 1983). Where, as here, "a defendant has a meritorious defense and the plaintiff would not be prejudiced, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *United States v. $ 22,050.00 United States Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (quotation marks and citation omitted). "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *$22,050.00*, 595 F.3d at 327.

In its motion to set aside the entry of default and in the accompanying affidavits from its employees, Digital Med explains why it did not timely respond to the Plaintiff's complaint. DN 24-1–5. Registered Agents received notice of Plaintiff's lawsuit and, in response, sent an email to Defendant on August 12, 2019 with the subject line "A document was uploaded to your online account for Digital Med LLC." DN 24 at 8. Digital Med represents that its company policy required former Accounting Administrator Arabella Medina to receive Registered Agents' email notifications, review any messages on Digital Med's Registered Agents account, and notify Financial Controller Carla Rivas if "any documents received indicated that a lawsuit had been filed against Digital Med." DN 24-5 at 3. Medina affies that she did receive the emails but did "not recall receiving or reviewing any emails or documents from [Registered Agents]" at the time they were sent because she "received a large number of work-related emails at the time and had a heavy workload." DN 24-5 at 3. Due to its own internal failures, Digital Med represents that its senior officers did not have actual notice of the lawsuit until February 26, 2020. DN 24 at 10. Over the following four days after receiving actual notice, Digital Med's employees notified its co-owners

who retained legal counsel to represent Digital Med in the matter. *Id*. On March 4, 2020, Digital Med's counsel entered a special appearance, DN 18, and motioned for an extension of time to respond to the Plaintiff's motion for default judgment, DN 20.

While Defendant is certainly responsible for the failure of its own internal processes, the Court finds that Digital Med's actions and omissions do not rise to the level of "an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). Defendant filed for an extension of time less than a week after its senior officers received belated notification of the lawsuit. DN 20. Before this Court responded to Defendant's motion to extend, Defendant filed the instant motion to set aside the entry of default. DN 24. Given the circumstances, Defendant's actions subsequent to its receipt of actual notice were swift and appropriate.

Even if Defendant's actions were unreasonable, it would be an abuse of discretion for the Court not to set aside the entry of default in this case. "Where the party in default satisfies the first two requirements for relief [from entry of default] and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 195 (6th Cir. 1986). The Court finds Defendant's explanation for its delayed response in the instant action is credible and that Defendant did not exhibit a disregard for the judicial proceedings.

The Court finds that Digital Med has established good cause to set aside the entry of default. Accordingly, the Court will grant Defendant's motion to set aside the entry of default.

**B. OneMD's Motion for Default Judgment**

OneMD moves for a default judgment. DN 11. A default judgment requires an entry of default. *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc*., 340 F.3d 345, 352–53 (6th Cir. 2003). As the October 22, 2019 entry of default will be set aside, Plaintiff's motion for default judgment will be denied as moot.

**C. Digital Med's Motion for Extension of Time**

Digital Med moves for an extension of time, DN 20, to respond to Plaintiff's motion for default judgment, DN 11. As Plaintiff's motion will be denied as moot, Defendant's motion for an extension of time to respond shall likewise be denied as moot.

**D. Attorney's Fees**

Plaintiff seeks an award of attorney's fees under 15 U.S.C. § 1117 for violation of its trademark rights. DN 1 at 8. As Plaintiff is not the "prevailing party" within the meaning of this statute, awarding attorney's fees on these grounds is inappropriate. However, "Courts have the inherent power to impose reasonable conditions on setting aside an entry of default in order to limit undue prejudice to the opposing party." *Vander Horst v. Goal Fin. & Intervenor Educ. Credit Mgmt*. (*In re Vander Horst*), Nos. 11-34686, 11-3227, 2012 Bankr. LEXIS 526, at *7–8 (Bankr. N.D. Ohio Feb. 16, 2012) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F. 3d 508 (2d Cir. 2001); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546–47 (9th Cir. 1988)).

Defendant's delayed response caused Plaintiff to incur unnecessary expense. Accordingly, equity dictates Defendant should bear at least some of those costs. *See Nilsson,* 854 F.2d at 1546–47 (9th Cir. 1988) (affirming trial court's order that defendant pay attorney's fees as a condition of setting aside default); *Corso v. First Frontier Holdings, Inc*., 205 F.R.D. 420, 421 (S.D.N.Y. 2001)

(ordering Defendants to reimburse plaintiff for attorney's fees expended on motion for default judgment); *E. & J. Gallo Winery v. Cantine Rallo, S.P.A.*, 430 F. Supp. 2d 1064, 1094 (E.D. Cal. 2005) (same). Accordingly, as a condition of setting aside the entry of default, Defendant shall be ordered to reimburse Plaintiff's costs and attorney's fees directly related to its motion for entry of default, DN 9, and its motion for default judgment, DN 11, without delay. Plaintiff shall also be ordered to furnish to Defendant an itemized statement of such costs and expenses.

### III. Conclusion

By separate Order entered this date, the Court will grant Plaintiff's motion to set aside the entry of default, DN 24, deny as moot Plaintiff's motion for default judgment, DN 11, and deny as moot Defendant's motion for extension of time, DN 20. As a condition of setting aside the entry of default, the Court will also order Defendant to reimburse Plaintiffs' costs and attorney's fees directly related to its motion for entry of default, DN 9, and its motion for default judgment, DN 11, without delay.

**IT IS SO ORDERED.**

May 11, 2020

Charles R. Simpson III, Senior Judge
United States District Court